February 12, 1993

UNITED STATES COURT OF APPEALS
For The First Circuit

No. 92-1858

UNITED STATES OF AMERICA,

Appellee,

v.

OLGIVIE O'BRIEN WILLIAMS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. John J. McNaught, U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Cyr, Circuit Judge.

James L. Sultan for appellant.

Robert L. Ullmann, First Assistant U.S. Attorney, with whom A.

John Pappalardo, United States Attorney, was on brief for appellee.

February 12, 1993

COFFIN, Senior Circuit Judge. Defendant Olgivie O'Brien

Williams appeals his conviction on charges of conspiracy to

possess cocaine with intent to distribute, possessing cocaine

with intent to distribute, and using or carrying a firearm in a

drug trafficking crime. We affirm.

I.

We begin with a brief synopsis of the facts, taken in the

light most supportive of the verdict, United States v. Karas, 950

F.2d 31, 35 (1st Cir. 1991), and the prior proceedings.

From December 1986 to April 1987, Williams and eleven co-

conspirators participated in a cocaine distribution scheme in

Boston. They operated a packaging center and retail outlets in

three apartments. On March 5, 1987, at the Westmore Street

outlet, the conspirators caught Herbert Beeche, a tenant in the

building, spying on them as they were weighing cocaine and

tallying their profits. That night, Beeche was summoned to the

conspirators' apartment. Williams accused Beeche of being an

informer and threatened to kill him. Williams and a co-

conspirator bound and gagged Beeche and placed him in the

bathtub. Williams then shot Beeche in the thigh.

Later that month, the Boston police executed search warrants

at two of the conspirators' outlets. The searches uncovered a

small quantity of cocaine, drug paraphernalia, firearms, and

ammunition. Eight of the conspirators ultimately were arrested.

Williams and six co-conspirators were tried jointly in

1988.1 At trial, the government presented the testimony of

Beeche and Lisa Gray, a girlfriend of one of the co-defendants

during part of the conspiracy. Both witnesses testified about

the drug preparation and transactions they had witnessed at the

various outlets and stated that they had seen many of the

conspirators, including Williams, routinely carrying and

displaying firearms during these transactions.

The jury convicted Williams on all three counts against

him.2 Williams raises two claims on appeal: that testimony at

trial was admitted improperly against him and that the district

court improperly limited his cross examination of Gray. We

discuss each issue in turn.

II.

Williams contends that the district court permitted the jury

to hear evidence from Gray of past conduct that should have been

1 One of the six co-defendants received a severance during
trial and later pleaded guilty to the one count against him. All
five of the remaining co-defendants also were convicted, and four
of them appealed. This court affirmed their convictions in
United States v. Walters, 904 F.2d 765 (1st Cir. 1990). Williams

raises issues on appeal that were not advanced in Walters.

Another conspirator, who was tried separately, also was convicted
and had his conviction affirmed. United States v. Green, 887

F.2d 25 (1st Cir. 1989).

2 Williams's trial counsel indicated at sentencing that he
would file a notice of appeal but did not. In 1991, Williams
filed a habeas corpus petition in district court, seeking, in

effect, the right to appeal his conviction. On June 11, 1992,
Williams's prior judgment was vacated and his original sentence
re-imposed. Williams's new counsel then filed a timely notice of
appeal.

-3-

excluded under Fed. R. Evid. 404(b).3 Gray testified that, in

December 1986, Williams had told her that "he had killed a couple

of people." Tr. Vol. III at 66. Following a lengthy sidebar

conference, the district court admitted the evidence without

explanation. Williams argues that the sole purpose of Gray's

testimony, especially in light of its repetition to the jury, id.

at 107, was to demonstrate that he had a bad character which made

him more likely to commit the drug-related offenses charged in

the indictment.

This court has adopted a two-part test to analyze Rule

404(b) evidence. United States v. Nickens, 955 F.2d 112, 123-24

(1st Cir. 1992); United States v. Oppon, 863 F.2d 141, 146 (1st

Cir. 1988). First, the district court must determine whether the

evidence has any "special relevance" to a material issue, such as

motive, intent, or plan. Nickens, 955 F.2d at 123. If so, it

must determine, pursuant to Fed. R. Evid. 403,4 whether the

3 Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not
admissible to prove the character of a person in order
to show action in conformity therewith. It may,
however, be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or
accident.

4 Rule 403 provides:

Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue
delay, waste of time, or needless presentation of
cumulative evidence.

-4-

probative value of the evidence outweighs the risk of unfair

prejudice. Id. at 124. We review the district court's decision

to admit the evidence for abuse of discretion. Karas, 950 F.2d

at 36; Walters, 904 F.2d at 768. Having done so, we agree with

Williams that the evidence was admitted improperly.

At trial, the government virtually admitted that it offered

the statement for its value as evidence of criminal propensity.

During the sidebar conference, the government argued that the

statement was relevant because Williams and a co-conspirator

"talk about how bad they are. How tough they are." Tr. Vol.

III. at 70. In essence, the government offered the evidence so

that the jury would infer that, because Williams was or claimed

to be a murderer, he was more likely than not also to be a

cocaine trafficker who uses guns in his business. The use of

"other acts" evidence to demonstrate criminal propensity is

specifically forbidden by Rule 404(b). Accordingly, the district

court erred in admitting the statement.

On appeal, the government characterizes the evidence of

Williams's prior wrongdoing as evidence of his plan to establish

and operate a cocaine distribution business by means of his modus

operandi of intimidation. Gray earlier had testified that

Williams unsuccessfully had offered her mother double rent for an

apartment located near the Westmore Street outlet. The

government claims that Williams's revelation that he was a

murderer is admissible under Rule 404(b) to illustrate his use of

-5-

both "carrot" and "stick" to locate an apartment from which to

sell cocaine.

Neither the law nor the record supports the government's

argument. Evidence of modus operandi is admissible under Rule

404(b) to prove identity, see generally 22 C.A. Wright, A.R.

Miller, & E.H. Cooper, Federal Practice and Procedure ("Wright &

Miller") 5246, at 512-13 (1978), but identity is not disputed

in this case.5 Moreover, at trial, the government made no

effort to link the "carrot" and the alleged plan to the "stick."

The manner in which the government conducted Gray's direct

examination manifests the disjunction between the attempt to rent

an apartment from her mother and Williams's statement to Gray.

After eliciting testimony regarding the failed attempt, the

government switched to a line of questions regarding the Nelson

Street outlet. It next solicited the in-court identification of

two co-conspirators. Only then did it begin the exploration of

Williams's and some of the other conspirators' backgrounds, which

produced the other-acts evidence. Having introduced the

challenged statement, the government did not connect it to the

attempt to rent an apartment. Nor did it suggest that Williams

had made the statement to intimidate Gray or her mother or that

5 Even were identity disputed, the government's position is
untenable. For conduct to be characterized as a modus operandi,

it generally must be "`so unusual and distinctive as to be like a
signature.'" 22 Wright & Miller at 513 (quoting C.T. McCormick,
Evidence 190, at 449 (1972)). On this record, neither

Williams's boast of committing or actual commission of murder is
so distinctive a device as to prove his identity as the drug
trafficker in this case.

-6-

Gray's mother even knew of the statement. Indeed, the government

did not place the evidence into any context, other than temporal,

related to the development or operation of the drug conspiracy.

The finding of error does not, however, conclude our

inquiry. We still must determine whether the error was harmless.

Karas, 950 F.2d at 37-38. We hold that it was. Having reviewed

the entire record and considered the probable impact of the error

on the minds of the jurors, we conclude "`with fair assurance,

after pondering all that happened without stripping the erroneous

action from the whole, that the [jurors'] judgment was not

substantially swayed by the error.'" United States v. Burke, 948

F.2d 23, 27 (1st Cir. 1991) (quoting United States v. Mazza, 792

F.2d 1210, 1216-17 (1st Cir. 1986) (quoting Kotteakos v. United

States, 328 U.S. 750, 765 (1946))).

Williams's possible status as a murderer was offered to the

jury through other properly admitted evidence. Beeche testified

without objection that he, too, knew that Williams claimed to be

a murderer. Gray testified that she had overheard Williams

threatening to kill a co-conspirator when money from cocaine

sales began to come up short. Under the circumstances, we

conclude that the admission of Williams's statement to Gray had

little prejudicial impact on the jury's judgment.

Furthermore, the record contains ample evidence to prove

Williams's involvement in a drug conspiracy and use of a firearm

in connection with it. Beeche testified that Williams shot him

in the thigh for being an informer. Gray testified that Williams

-7-

was responsible for delivering cocaine to the retail outlets and

collecting the proceeds. Both Gray and Beeche testified that

Williams routinely was armed while cocaine was being packaged and

sold. A videotape portrayed Williams brandishing a gun while a

co-conspirator counted money on a kitchen counter bearing

cocaine. In light of this evidence, we think it extremely

unlikely that the improperly admitted evidence swayed the jury.

See Mazza, 792 F.2d at 1221 (fair assurance standard satisfied if

it is highly probable that the challenged action did not affect

the judgment).

Because we find the admission of this evidence to be

harmless, we do not reach the question of whether the court

committed an abuse of discretion in admitting the evidence under

Rule 403. Karas, 950 F.2d at 38; United States v. Hernandez-

Bermudez, 857 F.2d 50, 54 (1st Cir. 1988). Nor is it necessary

to review the court's failure to issue a limiting instruction,

especially where trial counsel did not request one. See United

States v. De La Cruz, 902 F.2d 121, 124 (1st Cir. 1990) (stating

general rule that failure of trial court sua sponte to issue

limiting instruction is not reversible error).

Our finding of harmless error does not lessen our continuing

conviction that the government and the courts must exercise great

caution in handling evidence of other bad acts. Williams's

statement was unrelated to the offenses charged and was highly

inflammatory. To infect and jeopardize a prosecution with such

evidence is unwise and unjustifiable. It comes with ill grace to

-8-

introduce marginally justifiable evidence and then to defend its

use by arguing that there was so much evidence of guilt that any

error would be harmless. Courts, in turn, should remain vigilant

to whether other-acts evidence serves a genuinely probative

purpose that substantially outweighs the risk of unfair

prejudice.6 Hernandez-Bermudez, 857 F.2d at 54. At a minimum,

courts routinely may wish to issue an instruction limiting the

use of Rule 404(b) evidence, Oppon, 863 F.2d at 147, or to

ascertain whether defense counsel desires one.

III.

Defendant also contends that the district court erred in

limiting his cross examination of Gray. Defendant sought to

inquire into Gray's knowledge regarding the preparation and use

of cocaine and her brother's alleged cocaine dealing to

demonstrate that she was induced to cooperate with the government

to protect herself or her brother.

The Sixth Amendment to the Constitution guarantees a

criminal defendant the right to confront the witnesses against

him. An essential component of this right is the defendant's

prerogative to establish the biases, prejudices, or ulterior

motives of these witnesses through cross examination. Davis v.

Alaska, 415 U.S. 308, 315-17 (1974); United States v. Kepreos,

6 We recognize, however, that express findings regarding
the challenged evidence are not necessary so long as the record
indicates that the district court did weigh the balance between
the probative value and the prejudicial effect. See United

States v. Santagata, 924 F.2d 391, 394 (1st Cir. 1991) (citing De

La Cruz, 902 F.2d at 123 n.1).

-9-

759 F.2d 961, 965 (1st Cir. 1985). The trial court, therefore,

must permit sufficient cross examination to enable the jury "`to

make a discriminating appraisal of the possible biases and

motivations of the witness.'" Niziolek v. Ashe, 694 F.2d 282,

289 (1st Cir. 1982) (quoting United States v. Tracey, 675 F.2d

433, 437 (1st Cir. 1982)).

So long as it satisfies this standard, the district court

retains wide discretion to impose reasonable limits to avoid

prejudice, confusion of the issues, harassment, repetition, and

inquiry into marginally relevant issues. Delaware v. Van

Arsdall, 475 U.S. 673, 679 (1986); United States v. Twomey, 806

F.2d 1136, 1139 (1st Cir. 1986). "If the jury has sufficient

evidence before it bearing on the witness'[s] bias, the court

need not permit unending excursions into each and every matter

touching upon veracity." Kepreos, 759 F.2d at 965 (citation

omitted).

To establish that the district court has abused its

discretion, the defendant must show that the limitations imposed

were clearly prejudicial. Twomey, 806 F.2d at 1140. Williams

has not carried this burden. We, therefore, find that the

decision to exclude certain testimony fell within the court's

discretion.

The district court allowed all defense counsel, including

Williams's, ample opportunity to undermine Gray's credibility by

probing her bias and motive for testifying. See generally Tr.

Vol IV at 30-158. The court did not preclude any defendant from

-10-

exploring Gray's involvement with the cocaine trade but barred

only a few questions of marginal relevance. Its decisions did

not harm defendant because the relevant information reached the

jury through the interrogation by his and the other defense

counsel.

The intensive cross examination thoroughly delved into

Gray's unsavory connection with narcotics. It exposed her

cocaine use, her sale of marijuana, her knowledge of cocaine

trafficking, and her involvement with and knowledge of her

brother's drug trafficking. Gray admitted that she had been

arrested in December 1987 at her mother's house for possession of

cocaine, that a search of the house uncovered cocaine, marijuana,

drug paraphernalia, and a gun, and that the charges resulting

from this arrest subsequently were dismissed. She also admitted

that she was testifying under immunity from the government.

Gray's cross examination thus provided an extensive "record

from which to argue why [she] might have been biased or otherwise

lacked that degree of impartiality expected of a witness at

trial." Davis, 415 U.S. at 318 (emphasis in original). From

this record, various defense counsel, including Williams's,

argued plausibly that Gray was implicated in a cocaine

trafficking ring and that her cooperation with the government

stemmed from her desire to protect herself from prosecution and

to divert police attention from that drug ring.

The jury had more than enough information to appraise Gray's

credibility. Accordingly, we find that the exclusion of certain

-11-

questions about Gray's familiarity with cocaine and with her

brother's drug trade was not an abuse of the court's discretion.

Affirmed.

Concurrence follows.

-12-

TORRUELLA, Circuit Judge (Concurring). I agree with the

analysis and result of this case. I write separately simply to

express my exasperation at the repeated abuse of Rule 404(b) by

government prosecutors.

-13-